# United States Court of Appeals for the Federal Circuit

---

**GAME AND TECHNOLOGY CO., LTD.,**
*Appellant*

**v.**

**WARGAMING GROUP LIMITED, ACTIVISION BLIZZARD INC.,**
*Appellees*

---

2019-1171

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2017-01082.

---

Decided: November 19, 2019

---

JOSEPH J. ZITO, DNL ZITO, Washington, DC, argued for appellant. Also represented by RICHARD ARTHUR CASTELLANO.

HARPER BATTS, Sheppard Mullin Richter & Hampton LLP, Palo Alto, CA, argued for all appellees. Appellee Wargaming Group Limited also represented by CHRISTOPHER SCOTT PONDER, JEFFREY LIANG.

SHARON A. ISRAEL, Shook, Hardy & Bacon, LLP, Houston, TX, for appellee Activision Blizzard Inc. Also

represented by TANYA L. CHANEY, DAVID MOREHAN; JOHN D. GARRETSON, Kansas City, MO.

---

Before DYK, PLAGER, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Game and Technology Co. (GAT) appeals the final written decision of the Patent Trial and Appeal Board, ruling that institution of inter partes review was not barred under 35 U.S.C. § 315(b) and that claims 1–7 of U.S. Patent No. 7,682,243 would have been obvious over the asserted prior art. Under the facts of this case, and as argued by the parties, the Board did not err in holding that petitioner Wargaming Group Ltd. was not properly "served with a complaint alleging infringement of the ['243] patent" more than one year before it filed its IPR petition. Accordingly, the IPR was not barred under § 315(b). Because substantial evidence supports the Board's determination that claims 1–7 of the '243 patent would have been obvious over the asserted prior art, we affirm.

BACKGROUND

I

The '243 patent discloses a "method and system for providing an online game, in which ability information of a unit associated with a pilot is enabled to change as ability information of the pilot changes." '243 patent col. 1 ll. 20–25. The '243 patent admits that in the prior art, a gamer could control both a player character and a unit, but asserts that the player character and the unit would operate independently of one another. *Id.* at col. 1 ll. 37–48. Because they were independent, any increase in the ability of the player character would not translate to the unit, and vice versa. *Id.* at col. 1 ll. 48–55. The lack of a direct connection between the player character and its associated unit would

decrease gamer convenience and interest in the game. *Id.* at col. 1 ll. 54–60.

The '243 patent proposes to solve this problem by creating a system in which "a pilot and unit information associated with the pilot interoperate." *Id.* at col. 2 ll. 6–9. In one embodiment, a "sync point" of 0.8 represents the ratio by which a unit's "attack power" increases in response to a corresponding increase in the pilot's "brave points." *Id.* at col. 7 l. 63–col. 8 l. 1. Thus, if a pilot's brave points increase by ten, the attack power of its associated unit would increase by eight. *Id.* at col. 8 ll. 1–19.

The specification expressly defines both "pilot" and "unit":

> 1) Pilot. A pilot used in the present specification is a player character representing a gamer who imports his/her feelings in a game to continue the game. The gamer may control motions of a unit through the pilot.

> 2) Unit. A unit used in the present specification is an object operated by a control of a gamer, and the unit may be an object for continuing a game substantially, for example, a robot character. The unit may be a target for the gamer to import his/her feelings. Also, a concept of item belonging to the gamer may be applied to the unit.

*Id.* at col. 3 ll. 6–17. The specification also states that "the present invention may further include . . . a pet unit that accompanies a robot unit as another unit of the pilot, and helps a game progress." *Id.* at col. 7 ll. 14–16. The ability information of the pet unit "may also interoperate with change of ability information of the pilot and change." *Id.* at col. 7 ll. 17–20.

Claims 1–7 are at issue on appeal. Claim 1 is illustrative of the independent claims, including independent claims 6 and 7, and recites:

1. An online game providing [a] method for providing a pilot and a unit associated with the pilot at an online game, the method comprising the steps of:

controlling an online game such that a player can manipulate a pilot and a unit associated with said pilot, said pilot being a game character operated by a player, said pilot representing the player, said unit being a virtual object controlled by the player;

maintaining a unit information database, the unit information database recording unit information on said unit, in which the unit information includes ability of said unit and sync point information;

maintaining a pilot information database, the pilot information database recording pilot information on said pilot, in which the pilot information includes a unit identifier indicating said unit associated with said pilot, ability of said pilot and the ability of said unit associated with said pilot;

receiving a request for update on first pilot ability information of a first pilot;

searching for unit identifier information associated with the first pilot by referring to the pilot information database;

searching for sync point information associated with the searched unit identifier information by referring to the unit information database; and

updating and recording the first pilot ability information and unit ability information associated therewith in accordance with the searched sync point information such that said ability of unit is changed proportionally to changes in ability of the pilot by referring to said sync point,

wherein said sync point information is a ratio of which changes in said ability of pilot are applied to said ability of unit, and said steps of searching for unit identifier information and of searching for sync point information are performed by a processor.

*Id.* at col. 11 ll. 13–47.  Claims 2 through 5 depend from claim 1.[1]

## II

The date one year prior to the filing date of Wargaming's IPR petition is March 13, 2016.  GAT filed a complaint accusing Wargaming and its affiliate, Wargaming.net, of infringing the '243 patent on July 9, 2015.  GAT hired a process server to serve the complaint and summons on Wargaming.net at its registered agent in the United Kingdom (hereinafter, the "UK service").  The process server served Wargaming.net on December 10, 2015 "with the Summons in a Civil Action issued herein, together with" the attached documents.  J.A. 1972.  The attached summons given to Wargaming.net, however, was not signed by the clerk of court and did not bear the court's seal.  GAT's attorney also mailed a copy of the complaint and summons to Wargaming at its office in Cyprus in December 2015 (hereinafter, the "Cyprus service").

On February 11, 2016, counsel for Wargaming called counsel for GAT to discuss the lawsuit.  In a follow-up e-mail, Wargaming's counsel indicated that it would waive service as follows:

As I indicated, we still do not believe that service was properly effected on either Wargaming entity.

---

[1]    GAT does not separately argue the validity of the dependent claims and therefore the validity of these claims rises or falls with the validity of independent claim 1.

> Nevertheless, we will waive service and our defenses to improper service in exchange for your agreement that we have until April 1 to answer or otherwise respond to the complaint.

J.A. 1631.  No formal waiver was filed with the district court.

On March 15, 2016, counsel for Wargaming appeared in the action at a scheduling conference ordered by the district court.  On April 1, 2016, Wargaming filed a motion to dismiss for improper venue or alternatively for failure to state a claim.

### III

On March 13, 2017, Wargaming filed its petition for IPR.  The petition stated that "Petitioner and real-parties-in-interest are not barred or estopped from requesting inter partes review . . . because they have not been served." J.A. 3043.  Petitioner cited a declaration of its general counsel in support of this contention.  In its preliminary response, GAT relied on the UK service to show that Wargaming's IPR petition was barred under 35 U.S.C. § 315(b). As evidence, GAT submitted a "witness statement of service" from the process server stating that a complaint for infringement of the '243 patent was served in England and that the deemed date of service was December 14, 2015. J.A. 1972.  After reviewing the parties' briefs and evidence, the Board acknowledged that the "record presents competing evidence as to whether Wargaming.net LLP was served more than one year before the filing of the Petition." J.A. 3045.  The Board determined that development of the record would be required to resolve the factual issues underlying the time bar, but it instituted the IPR in the interim.  In response, GAT submitted a supplementary brief, now relying on both the UK service and the Cyprus service to establish the § 315(b) bar date.  Acknowledging that the UK service's summons may not have included the court's seal or the clerk's signature, GAT argued that a "mere

procedural printing error that caused the seal and signature to be missing from the copy of the summons properly served by [the process server] does not render the service ineffective." J.A. 3291.

At a subsequent hearing before the Board, one Administrative Patent Judge stated that the Board does not "have the authority, as far as I can see, to deem service to have occurred and overlook errors in service. We are bound by what happened in the district court." J.A. 3109. Another APJ on the panel expressed his concern that "[i]f we don't have a [district court] decision saying that service occurred, what is it that we are supposed to hang our hat on here?" J.A. 3110. When asked if it was relying on waiver of service as an independent ground for service, GAT responded that "the date that you should be looking at should be the date of attempted service," as the waiver simply "indicates there was no intent by the parties to dispute service." J.A. 3111.

In its final written decision, the Board concluded that neither the UK service nor the Cyprus service sufficed to trigger § 315(b)'s time bar. The Board determined that the lack of signature and seal rendered the UK service non-compliant with Rule 4(a) of the Federal Rules of Civil Procedure. The Board reiterated that it has "no authority to overlook defects in service of a complaint in district court litigation and deem service to have occurred," and emphasized that "no district court has deemed service to have occurred." *Wargaming Grp. Ltd. v. Game & Tech. Co.*, No. IPR2017-01082, 2018 WL 4278986, at *6 (P.T.A.B. Sept. 7, 2018). The Board likewise determined that the Cyprus service failed to satisfy Rule 4, which requires that the clerk send the summons and that the form of mail include a signed receipt. Because counsel for GAT had sent the summons and did not include a signed receipt, the Board concluded that the Cyprus service did not qualify as service.

IV

Wargaming's IPR petition asserted that claims 1–7 of the '243 patent would have been obvious over two prior art references: Levine[2] and the Dungeons & Dragons Player's Handbook[3] (hereinafter, the "D&D Handbook").

Levine discloses a "computing grid for massively multi-player online games." J.A. 626 at Title. Levine's invention "includes an application database that stores state information about the users, objects, and entities participating in the interactive, multi-user application." J.A. 631 ¶ 155. Levine also discloses that "[t]he rules of many [massively multi-player online games] are based on paper and dice role-playing games popularized in the dice game Dungeons and Dragons." J.A. 627 ¶ 14.

The D&D Handbook is a rulebook for playing the tabletop fantasy roleplaying game Dungeons & Dragons. The D&D Handbook explains that a character may have a "familiar," or a magical beast companion that enhances the abilities of its master. J.A. 1054. Both the character and its familiar have a certain number of "hit points," or health. A character's hit points, which represent the amount of damage that the character can withstand without dying or falling unconscious, increase with its level. At any given time, the familiar has "one-half the master's total hit points," rounded down. J.A. 1054.

In its final written decision, the Board construed the terms "pilot," "unit," and "ability" in claim 1 of the '243 patent. The Board rejected GAT's argument that the "unit" must be an object such as a robot or vehicle "on which a pilot rides," noting that the specification expressly defines

---

[2]    U.S. Patent Application No. 2003/0177187.

[3]    DUNGEONS AND DRAGONS: PLAYER'S HANDBOOK: CORE RULEBOOK I V. 3.5 (Julia Martin & John Rateliff eds., 2003).

"unit" as simply "an object operated by a control of a gamer." *Wargaming*, 2018 WL 4278986, at *9 (quoting '243 patent col. 3 ll. 12–13). The Board emphasized that the specification discloses as an example of a "unit" a "pet unit," which indicates that the "unit" need not be an object operated by the pilot. *Id.* For similar reasons, the Board rejected GAT's proposed construction of "pilot" as "a player-operated game character that operates the motion controls of a separate unit" and construed "pilot" as simply "a game character operated by a player, said pilot representing the player." *Id.* at *11–12. The Board likewise rejected GAT's assertion that an "ability" must be limited to "a characteristic of the pilot or unit's *performance*" as opposed to a broader set of numerically represented attributes, finding no support for this limitation in the claims or specification. *Id.* at *12–13.

Applying these constructions, the Board found that the D&D Handbook's reference to hit points and a hit point ratio between a "character" and a "familiar" discloses the pilot ability, unit ability, and sync point information limitations in claim 1. *Id.* at *18–19. The Board also found that Levine discloses claim 1's remaining "database" and "online game" limitations. *Id.* at *19–21. And because Levine expressly discloses that online games of its type incorporate D&D rules, the Board found that a person of ordinary skill in the art would have sufficient motivation to combine the two references. *Id.* at *21. The Board thus concluded that the "subject matter of claim 1 would have been obvious to a person of ordinary skill in the art based on the combined teachings of D&D Handbook and Levine." *Id.*

GAT appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## Discussion

GAT raises two issues on appeal, asserting that (1) the Board erred by instituting the IPR when the petition was

time-barred under § 315(b); and (2) the Board erred in its determination that claims 1–7 of the '243 patent would have been obvious over Levine and the D&D Handbook. We first address GAT's time-bar arguments, and then we turn to obviousness.

I

We have jurisdiction to review the Board's time-bar determination in its final written decision. *Wi-Fi One, LLC v. Broadcom Corp.*, 878 F.3d 1364, 1374 (Fed. Cir. 2018) (en banc). We review the Board's legal conclusions de novo and its fact findings for substantial evidence. *Bennett Regulator Guards, Inc. v. Atlanta Gas Light Co.*, 905 F.3d 1311, 1314 (Fed. Cir. 2018). With respect to the Board's procedural or administrative decisions, our review is limited to ensuring that they are not "arbitrary, capricious, an abuse of discretion . . . otherwise not in accordance with law . . . [or] unsupported by substantial evidence." *Personal Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 992 (Fed. Cir. 2017) (quoting 5 U.S.C. § 706(2)(A), (E)). The IPR petitioner bears the burden of persuasion to demonstrate that its petitions are not time-barred under § 315(b). *Worlds Inc. v. Bungie, Inc.*, 903 F.3d 1237, 1242 (Fed. Cir. 2018).

Section 315(b) states that "[a]n inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner . . . is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b). We have held that the "plain meaning of the phrase 'served with a complaint' is 'presented with a complaint' or 'delivered a complaint' in a manner prescribed by law." *Click-To-Call Techs., LP v. Ingenio, Inc.*, 899 F.3d 1321, 1330 (Fed. Cir. 2018), *cert. granted in part sub nom. Dex Media, Inc. v. Click-To-Call Techs., LP,* 139 S. Ct. 2742 (2019). Indeed, "the legally-charged text 'served with a complaint' is used ordinarily in connection with the official delivery of a complaint in a civil action." *Id.*

At the outset, we address GAT's assertion that the Board erred by holding that it had "no authority to overlook defects in service of a complaint in district court litigation and deem service to have occurred" and that it cannot find proper service if "no district court has deemed service to have occurred." *Wargaming*, 2018 WL 4278986, at \*6. We agree with GAT. Because the Board's authority to institute an IPR is dependent on whether the "petitioner . . . is served with a complaint," 35 U.S.C. § 315(b), the Board must necessarily determine whether service of a complaint alleging infringement was properly effectuated. The Board cannot strictly rely on a district court's determination of proper service because district courts rarely make such determinations. Indeed, where the parties do not challenge service, a district court might never determine whether service was proper or whether the defendant waived its defense of improper service.

Section 315(b) does not itself define what it means to be "served with a complaint." As we indicated in *Click-To-Call*, the Board can look to multiple sources to discern the meaning of "served." 899 F.3d at 1330. Rule 4 of the Federal Rules of Civil Procedure establishes the basic requirements for service in a federal court. *See generally* Fed. R. Civ. P. 4. Other sources include the ordinary meaning of "served," as well as common law interpreting Rule 4. *See, e.g.*, 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1083 (4th ed. 2019) (noting that "[t]he general attitude of the federal courts is that the provisions of Federal Rule 4 should be liberally construed"); *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (explaining that the service requirement is satisfied by proper service of process, consent, waiver, or forfeiture by the defendant (first citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999), then citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987))).

In its interpretation of § 315(b), the Board properly looked to Rule 4 as a starting point for its analysis of whether GAT's complaint had been served. However, it is presumed that Congress knows the universe of common law interpreting a statutory term and that, absent any indication to the contrary, Congress intends to adopt the common law interpretation of the term when using identical language in later-enacted statute. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 696–98 (1979). We therefore agree with GAT that the Board's conclusion that it lacked authority to consider the propriety of service under Rule 4 and common law interpreting Rule 4 was incorrect. Aside from the Board's general statement, however, we see no error in the Board's analysis, particularly given GAT's failure to raise certain arguments on appeal.

GAT's opening brief devotes seven pages to the time-bar issue. Of those pages, almost six address GAT's principal argument that "[c]ompliance with the time-bar requirement is a condition precedent to institution of an IPR, and thus a decision should have been rendered before institution of the IPR requested by Wargaming." Appellant's Br. 21. While we agree with GAT that issues related to the time bar should ordinarily be decided prior to institution, we note that GAT would only have been harmed by the Board's decision to institute if the IPR was in fact time-barred. The gravity of this purported error is thus entirely dependent on the merits of GAT's substantive time-bar arguments. *See Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2153 (2016) (noting that courts need not "throw out an inter partes review decision whenever there is some technical deficiency in the . . . Patent Office's institution decision" and that "errors that do not cause a patent owner prejudice may not warrant relief." (citing 5 U.S.C. § 706)). For at least this reason, we decline GAT's invitation to find error in the Board's process.

GAT's opening brief devotes only one paragraph to its substantive argument that the UK service occurred more

than a year before Wargaming filed the petition. GAT simply states that it "provided proof [of the UK service] and provided proof that Wargaming's counsel in writing on February 11, 2016 waived any defenses as to improper service." Appellant's Br. 22–23 (citation omitted). This level of detail is insufficient to properly preserve GAT's arguments on appeal. The Board rejected GAT's service arguments based on the plain language in Rule 4, and GAT fails to address, let alone show, any specific errors in the Board's findings. Mere assertions that the UK service was proper without explanation or legal argument are usually insufficient. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (holding an argument waived because it was not presented as a developed argument in the opening brief); *see also CBOCS W., Inc. v. Humphrie*s, 128 S. Ct. 1951, 1963 n.2 (2008) (declining to consider a claim that was waived because it was presented as "only a skeletal argument" (quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407 (7th Cir. 2007))). As such, we hold these issues waived on appeal.

GAT also failed to preserve its argument that Wargaming's counsel waived service, thus triggering § 315(b)'s time bar at the time of the waiver. In this court, counsel for GAT argued for the first time that Wargaming's e-mail qualified as waiver under Rule 4(d). Reply Br. 1–3; Oral Arg. at 1:38–6:36, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-1171.mp3. But GAT did not present this waiver theory based on the February 11 e-mail to the Board. Before the Board, GAT argued only that the UK service and the Cyprus service were proper despite minor technical deficiencies, highlighting Wargaming's statement that it waived any deficiencies in service only as support for its position that there were no such deficiencies. We will not consider GAT's argument for the first time on appeal. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) (collecting cases) ("If a party fails to raise an argument before the trial court, or

presents only a skeletal or undeveloped argument to the trial court, we may deem that argument waived on appeal."); *Sage Prods. Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("[A]ppellate courts do not consider a party's new theories, lodged first on appeal."). Like certain shapeshifting characters in Dungeons & Dragons, GAT's evolving arguments are difficult to track. Indeed, at oral argument, counsel for GAT appeared to retract its reliance on Rule 4(d), explaining that GAT was merely contending that the UK service and Cyprus service complied with the Hague convention. *See* Oral Arg. at 1:38–6:36. As noted above, however, GAT did not develop these arguments in its opening brief. Because GAT did not preserve its specific arguments for why service was proper, we cannot conclude that the Board erred in its determination that Wargaming's petition was not barred by § 315(b).

## II

Turning to the merits, GAT argues that the Board erred in concluding that claims 1–7 of the '243 patent would have been obvious over Levine and the D&D Handbook. GAT focuses its arguments on the Board's construction of the terms "unit," "pilot," and "ability."

We review the ultimate question of the proper construction of a patent claim term de novo, with any underlying fact findings reviewed for substantial evidence. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 838 (2015); *Praxair Distrib., Inc. v. Mallinckrodt Hosp. Prods. IP Ltd.*, 890 F.3d 1024, 1031 (Fed. Cir. 2018) (citing *HTC Corp. v. Cellular Commc'ns Equip., LLC*, 877 F.3d 1361, 1367 (Fed. Cir. 2017)). If, as here, the IPR stems from a petition filed before November 13, 2018, the claims are given the "broadest reasonable interpretation" consistent with the specification. *Cuozzo*, 136 S. Ct. at 2142; *see also Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the Patent Trial and Appeal Board*, 83 Fed. Reg. 51,340 (Oct. 11, 2018) (to be

codified at 37 C.F.R. pt. 42). Obviousness is also a question of law reviewed de novo, with any underlying fact findings reviewed for substantial evidence. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1326 (Fed. Cir. 2016).

GAT first argues that in the context of the '243 patent specification, a "unit" must be "piloted" by the "pilot," and that the D&D Handbook does not disclose such a unit. Appellant's Br. 28, 35. GAT identifies a robot character or vehicle character as an example of a "unit" whose movement is influenced or controlled by the pilot. GAT's proposed construction, however, is contradicted by the express definition of "pilot" in the patent specification. The specification defines "pilot" as "a player character representing a gamer." '243 patent col. 3 ll. 7–8. The definition further states that "the gamer *may* control motions of a unit through the pilot." *Id.* at col. 3 ll. 9–10 (emphasis added). The use of the word "may" in the definition strongly implies that the pilot does not *necessarily* control the motions of the unit. In addition, the specification discloses that a "unit" may be a "pet unit." *Id.* at col. 7 l. 15. We agree with the Board that a "pet unit" that accompanies a "player character representing a gamer" is analogous to the D&D Handbook's magical beast companion "familiar" that accompanies a player's character. Because, as the Board explained, "[t]he parties agree that a familiar in D&D Handbook is controlled by the player," we see no error in the Board's conclusion that "the combination of D&D Handbook and Levine renders obvious a 'unit being a virtual object controlled by the player.'" J.A. 39.

GAT next argues that the "hit point" disclosed in the D&D Handbook is not the same as an "ability" because "[a]bility denotes skill, either native or acquired, and refers to action under its plain meaning." Appellant's Br. 35. The '243 patent specification offers no such definition for "ability," nor is GAT's proposed construction supported by the specification. For example, the '243 patent discloses an embodiment in which a pilot's ability is represented by its

"brave points," *id.* at col. 7 l. 38–col. 8 l. 18, but does not explain or indicate how a "brave point" represents a particular skill or action. While GAT argues that its construction is consistent with the plain meaning of "ability," it does not adequately address the Board's finding that a "hit point" can plausibly be interpreted as the "ability" of a character to withstand damage. GAT's argument with respect to the construction of the term "ability" is therefore unconvincing.

GAT finally argues that Levine and the D&D Handbook cannot disclose all of the claim elements because the "claimed invention is directed to computer processes, not game rules or story lines attributable to a dice game that emphasizes interpersonal engagement without the assistance of electronics or computers." Appellant's Br. 34. GAT does not argue that Levine or the D&D Handbook fails to disclose a particular claim element or that there would be no motivation to combine the two references. Instead, GAT's argument seems to focus on the fact that the D&D Handbook provides the rules for a dice game. *See, e.g.*, Appellant's Br. 33–34 (stating that "[a] dice game manual cannot reasonably be interpreted as disclosing" the claim elements). The Board, however, found that Levine discloses all computer processing elements of the claims, not the D&D Handbook. The question in an obviousness inquiry is whether it would have been obvious to a person of ordinary skill in the art to combine the relevant disclosures of the two references, not whether each individual reference discloses all of the necessary elements. *See Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008) ("Obviousness can be proven by combining existing prior art references, while anticipation requires all elements of a claim to be disclosed within a single reference."). GAT's argument therefore misses its mark.

CONCLUSION

For the reasons set forth above, we discern no error in the Board's decision to institute the IPR. Furthermore,

because substantial evidence supports the Board's determination that claims 1–7 of the '243 patent would have been obvious over the asserted prior art, we affirm.

**AFFIRMED**