NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

_____

**IN RE:  ROBYN AYLOR HAINES, ROBERT BENSON AYLOR,**

*Appellants*

_____

2024-2338

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 12/925,221.

_____

Decided:  May 15, 2025

_____

ROBYN AYLOR HAINES, Franklin, TN, pro se.

ROBERT BENSON AYLOR, I, Blue Ash, OH, pro se.

JUSTIN BOVA, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Coke Morgan Stewart.  Also represented by MONICA BARNES LATEEF, AMY J. NELSON.

_____

Before LOURIE, DYK, and CUNNINGHAM, *Circuit Judges.*

PER CURIAM.

Robin Aylor Haines and Robert Benson Aylor (collectively, "Haines") appeal from a decision of the United

States Patent and Trademark Office ("PTO") Patent Trial and Appeal Board ("the Board") affirming an examiner's rejection of all pending claims of U.S. Patent Application 12/925,221 ("the '221 application"), S.A 32–75.[1] *In re Haines*, No. 2024-000693, 2024 WL 3200435 (P.T.A.B. Mar. 29, 2024) ("*Decision*"). For the reasons provided below, we *affirm*.

BACKGROUND

The '221 application is generally directed to diagnostic testing. '221 application, S.A. 75. The '221 application provides that the claimed invention collects a sample of a volatile material (*e.g.*, breath or urine) produced by a living entity (*e.g.*, person or animal) and then analyzes the sample using a mass spectrometer to create a digital health record with information such as the living entity's age or weight. *Id.*, S.A. 32, 38, 44. The digital health record is used to diagnose whether the living entity has a particular condition. *Id.*, S.A. 44.

Claim 112 is representative.

112. A computer readable digital health record for a living entity at a specific time comprising:

the results obtained by collecting at least one sample of volatile headspace material from around said living entity,

electron-ionization of said volatile headspace material using a headspace-mass spectrometer to obtain mass spectral channel signals (m/z),

and then storing said mass spectral channel signals, the identity of said living entity

---

[1] "S.A." refers to the supplemental appendix filed in connection with Appellee's brief.

> and the specific time to create said computer readable digital health record.

*Id.*, S.A. 27 (spacing adjusted).

The examiner rejected all pending claims (claims 112–115 and 117–129) of the '221 application on one or more grounds: (1) claims 112–114 and 117 as anticipated by Cranley[2] as evidenced by Han;[3] (2) claims 112–115 and 117–129 as obvious over Cranley and other references, (3) claims 124–129 as indefinite and lacking adequate written description, and (4) claims 112–115 and 117–128 as directed to patent-ineligible subject matter. S.A. 1815–45. Cranley, entitled "Personal Computer Breath Analyzer for Health-Related Behavior Modification and Method," discloses "[a] medical breath component analyzer which maintains a data-base profile of a patient over time." S.A. 1972. Han provides an overview of how mass spectrometers operate. S.A. 2033–34. Haines appealed the examiner's final rejection to the Board, which affirmed each of the examiner's rejections. *See Decision* at *8.

Haines timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

### DISCUSSION

Haines challenges the Board's conclusions as to anticipation, obviousness, indefiniteness, written description, and subject matter eligibility. We focus our analysis only on the anticipation of claim 112, which is dispositive of the appeal. "We review the Board's legal conclusions de novo and its factual findings for substantial evidence." *Incept LLC v. Palette Life Scis., Inc.*, 77 F.4th 1366, 1371 (Fed.

---

[2]    U.S. Patent Application Publication 2002/0007249, S.A. 1972–89.

[3]    Xuemei Han, Aaron Aslanian & John R. Yates III, *Mass Spectrometry for Proteomics*, 12 CURRENT OP. CHEM. BIOLOGY 483 (2008), S.A. 2033–45.

Cir. 2023).  "[A]nticipation is a question of fact subject to substantial evidence review." *IOENGINE, LLC v. Ingenico Inc.*, 100 F.4th 1395, 1402 (Fed. Cir. 2024) (citation omitted).

We first address Haines's argument that it was erroneous for the Board to affirm the examiner's reliance on Cranley as a prior art reference.  Specifically, Haines argues that, as provided in Haines's affidavit pursuant to 37 C.F.R. § 1.131, the '221 application was "made prior to the effective date of Cranley."  Haines Br. 8.  But 37 C.F.R. § 1.131 does not apply if the rejection is "based upon a statutory bar," such as when the asserted reference is a published patent application, as Cranley is here.  *See* 37 C.F.R. § 1.131(a)(2) ("Prior invention may not be established under this section if . . . [t]he rejection is based upon a statutory bar.").  Therefore, because the earliest priority date of Haines's application is October 29, 2009, *see* S.A. 32, and Cranley was published on January 17, 2002, *see* S.A. 1972, Cranley was properly determined to be prior art. We therefore proceed to Haines's challenges on the merits.

Next, Haines challenges the Board's determination that it was permissible for the examiner to rely on Han in concluding that Cranley implicitly discloses the "electron-ionization of said volatile headspace material using a headspace-mass spectrometer to obtain mass spectral channel signals (m/z)" limitation.  *See Decision* at *7; '221 application, S.A. 27.  Specifically, Haines asserts that the use of Han as an additional reference was error because anticipation findings must be based on only a single reference. Haines Br. 7.

We are unpersuaded.  Han was not used as an additional reference to meet a limitation of claim 112.  Rather, as explained by the Board, the examiner "utilize[d] Han only as evidence to explain" why Cranley's disclosure of a mass spectrometer implicitly discloses "obtain[ing] mass spectral channel signals (m/z)." *Decision* at *7 (cleaned up); *see* S.A. 1823 (citing S.A. 2034 (Han), explaining that

"[m]ass spectrometers consist of . . . a mass analyzer that separates ionized analytes based on $m/z$ ratio, and a detector that records the number of ions at each $m/z$ value"). Such a use was permissible. *Telemac Cell. Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1328 (Fed. Cir. 2001) (permitting recourse to additional reference in anticipation inquiry to "determine whether a feature, while not explicitly discussed, is necessarily present in a[n] [asserted] reference").

Haines also challenges the Board's affirmance of the examiner's finding that Cranley meets the "collecting at least one sample of volatile headspace material from around [a] living entity" limitation. *See Decision* at *7; S.A. 1988. Haines asserts that was error because Cranley requires that its collected sample is a patient's breath, *e.g.*, S.A. 1981 ¶ 1, and therefore "teaches away" from the claimed limitation, which is not so narrowed. Haines Br. 8.

We disagree. First, "the question [of] whether a reference 'teaches away' from the invention is inapplicable to an anticipation analysis." *Celeritas Techs., Ltd. v. Rockwell Intern. Corp*, 150 F.3d 1354, 1361 (Fed. Cir. 1998). Furthermore, dependent claim 114 of the '221 application explicitly states that the living entity's "breath" can constitute the "sample of volatile headspace material," as recited in claim 112. '221 application, S.A. 27. As the Board explained, "Cranley's breath sample cannot teach away from a sample that, itself, includes a breath sample." *Decision* at *7.

Similarly, Haines asserts that the Board's anticipation determination as a whole was infected with legal error because Cranley additionally requires its breath sample to "not [be] contaminated" and to be "processed in a quantitative analyzer," *see* S.A. 1982 ¶ 21, 1983 ¶ 23, and thus again "teaches away" from claim 112, which does not contain such requirements. Haines Br. 8. We again disagree.

First, as explained above, whether a reference teaches away from an invention is irrelevant for anticipation

purposes. *Celeritas Techs.*, 150 F.3d at 1361. Second, that a reference discloses additional requirements absent from a claim does not detract from the reference's disclosure of the claimed limitations. *See, e.g.*, *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1319 (Fed. Cir. 2009) (affirming the Board's anticipation determination despite reference disclosing unclaimed requirements).

For those reasons, we conclude that the Board did not legally err in affirming the examiner's rejection of claim 112 as anticipated, and that the Board's analysis was supported by substantial evidence. Because Haines does not present any separate challenges to the Board's other anticipation or obviousness conclusions, we affirm the Board's decision sustaining the examiner's rejection of all pending claims. *See In re Bindshedler*, 427 F.2d 1261, 1264 (CCPA 1970) ("[W]e are constrained to sustain" an examiner's rejection when the applicant does "not challenge[] the rejection of th[e] claim on the prior art").[4]

## CONCLUSION

We have considered Haines's other arguments and find them unpersuasive. For the foregoing reasons, we *affirm*.

## **AFFIRMED**

## COSTS

No costs.

---

[4]   Haines also requests a patent term adjustment ("PTA") for the '221 application. Haines Br. 3, 10. We reject this argument because, (1) we do not have jurisdiction over PTA requests, *see* 35 U.S.C. § 154(b)(4)(A) (giving the U.S. District Court for the Eastern District of Virginia exclusive jurisdiction over such requests), and (2) PTA requests only apply to an issued patent, which Haines does not possess.